UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Chad Roffers, ) | |
| ) | |
| Debtor, ) | Case No. 12-29619 |
| ) | |
| ) | Adv. No. |
| Grand Estates Auction Company, ) | |
| ) | Chapter 7 |
| Plaintiff, ) | Hon. Janet Baer |
| ) | |
| v. ) | |
| ) | |
| Chad Roffers, ) | |
| Defendant. ) | |

**SECTION 523(a)(2)(A) COMPLAINT TO FIND DEBT TO
GRAND ESTATES CANNOT BE DISCHARGED**

Grand Estates Auction Company ("Grand Estates"), pursuant to Bankruptcy Code § 523(a)(2)(A), requests that this Court hold that the Debtor's debt to Grand Estates is not subject to discharge, and in support hereof, respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b), and 157(a) and (b)(1).

2. Venue is proper pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

1

4. This is an adversary proceeding pursuant to F. R. Bankr. P. 7001(6).

5. The first date set for the Debtor's 341 meeting was September 18, 2012. Grand Estates asked for and received an extension of time to object to the discharge of certain debts.

## PARTIES

6. Grand Estates, the d/b/a of GEA, Inc., is incorporated under the laws of the State of North Carolina and does business in North Carolina. Grand Estates auctions and sells luxury residential real estate.

7. Chad Roffers is an individual, currently a resident of Hinsdale, Illinois, and the debtor in this chapter 7 proceeding ("Roffers" or the "Debtor").

## FACTS

8. Concierge Auctions LLC ("Concierge") is a Florida corporation and since its founding in 2008, has been in the business of auctioning and selling luxury real estate. It is a direct competitor of Grand Estates.

9. Roffers founded Concierge and at one point was its managing member. With the intent to evade his creditors, Roffers transferred his legal interest in Concierge to his wife, Bradlee. Nonetheless, he continues to control Concierge and, through Bradlee, continues to receive large payments from Concierge, the fruits of his fraudulent activities.

10. On April 16, 2013, Grand Estates filed a RICO complaint in New York district court, identifying Concierge as the enterprise, with 4 named

defendants, pending as 13-cv-02527 (the "RICO Complaint"). A copy of the RICO complaint, without exhibits, is attached as **Exhibit A**.

11. As detailed in the RICO Complaint, for many years the Debtor and Concierge have been stealing clients and sales from Grand Estates by making fraudulent statements and using shill bidders. This practice continues unabated.

12. Concierge and the Debtor have engaged in these dishonest practices with the specific intent to deceive potential clients so that they would engage Concierge, not Grand Estates, to market their luxury real estate.

13. Numerous parties, some of whom are plaintiffs in the RICO Complaint, justifiably relied on the false statements made by the Debtor and Concierge, and because of that reliance engaged Concierge as auctioneer instead of Grand Estates. One instance of these fraudulent statements is detailed in the Affidavit of Deborah Jarol, attached as **Exhibit B**.

14. Grand Estates believes that Concierge is still controlled by the Debtor, and that the Debtor is a proper defendant in the RICO case. If this Court finds that his debt to Grand Estates is non-dischargeable, or lifts the automatic stay to allow it, Grand Estates will add the Debtor as a defendant.

15. Grand Estates anticipates that it will prevail in the RICO Case, which will result in the imposition of a significant liability on Concierge, the Debtor, and others, much of it owed to Grand Estates. This Complaint asks that this debt be denied discharge.

16.  The fraudulent deeds, as detailed in the RICO Complaint were perpetrated both by the Debtor personally and by Concierge at the Debtor's direction.

17.  The Debtor admits to having had various connections with Concierge over the years, including founder, managing member, head of client services, employee, and so forth.

18.  Regardless of his title at any given moment, the Debtor personally directed most, if not all, of the fraud that Concierge perpetrated.

19.  Similarly, Concierge has transferred funds to the Debtor in various guises, including percentage of sales, bonuses, salary, and distributions to Bradlee.

20.  Regardless of the form of these transfers, the Debtor has personally benefited from his fraudulent acts and has personal liability.

21.  In his Statement of Financial Affairs, at his 341 meeting and at his 2004 exam, the Debtor claimed that he does not and never did have an ownership interest in Concierge, but these protestations are belied by various documents.

22.  The Florida License Division website, www.myfloridalicense.com, shows the Debtor's auctioneer's license, and identifies him as the "Business Owner" of Concierge Auctions LLC.  The license is still valid, not expiring until November, 2013.  A true and correct copy of the relevant pages on the Florida License Division website are attached as **Exhibit C**.

23. On www.sunbiz.org/scripts, the Florida Secretary of State's website, is an amendment to the Concierge's Articles of Incorporation. The amendment, dated August 19, 2008, identifies Chad Roffers as the managing member, and is signed by Chad Roffers. No other changes were made to Concierge's Articles of Incorporation at this time. A true and correct copy of this document is attached as **Exhibit D**.

24. On March 13, 2013, at his 2004 exam, the Debtor denied that he had ever been the managing member of Concierge, and that "we figured out real quickly that it [the amendment] was a mistake". (2004 exam deposition of Chad Roffers "CR" 104:4 – 5. Cited sections of Chad Roffers' deposition are attached as **Exhibit E**.)

25. However, it was not until March 31, 2009, 9 months after filing the amendment, that Concierge corrected this "mistake". (CR 109: 5 – 110:14).

26. The Debtor continued his attempts to put some distance between himself and Concierge. Also in 2009, Bradlee, along with her mother, founded CA Partners with the specific intent to become involved in Concierge. (March 14, 2013, 2004 exam deposition of Bradlee Roffers "BR" 22:12 – 23:8. Cited sections of Bradlee Roffers' deposition transcript are attached as **Exhibit E**.) Bradlee is the managing member of CA Partners and owns 95%; her mother owns 5%. (CR 112:6 – 21).

27.  CA Partners invested $20,000 in Concierge in return for an ownership share of approximately 30%; currently CA Partners' share is about 40%. (BR 26:18 – 24).

28.  At his 341 meeting, Debtor testified that the founding of CA Partners, and CA Partners' investment in Concierge was made so that Concierge would continue to employ him.

29.  Also at the 341 meeting, he testified that he was a W-2 employee of Concierge, and did not receive commission.  According to his Statement of Affairs, as of the Petition Date, July 26, the Debtor's total earnings in 2012 were $37,500.

30.  Bradlee, on the other hand, has reaped an impressive return on her entirely passive investment in Concierge.  Specifically, CA Partners received:

    2009   $140,000
    2010   $730,000
    2011   $166,000
    2012   $250,000 - $300,000.

(BR 35:6 – 22).  Using the numbers supplied by Bradlee, CA Partners received a total of $1,286,000 over 4 years, a 6430% return on a $20,000 investment.

31.  Conveniently, after the Petition Date had safely passed, the Debtor received a bonus of $500,000 from Concierge for 2012.  (CR 49:13 – 19).

32.  Based on these and other facts, Grand Estates expects that the RICO Case will show that the Debtor continues to control Concierge, continues to direct its fraudulent activities, and continues to receive a large income as a result.

6

Grand Estates will be able to establish that it is one of the victims of this RICO conspiracy.

**COUNT I - § 523(a)(2)(A)**

33. Grand Estates repeats and incorporates ¶¶ 1 – 32.

34. Section 523(a)(2)(A) denies discharge to a debt that results from false pretenses, false representations, or actual fraud.

35. The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud. *Cohen v. de la Cruz*, 118 S. Ct. 1212 (1998).

36. As detailed in the attached RICO Complaint, the Debtor, both personally, and through Concierge, has made many false representations intended to induce reliance, and engaged in actual fraud.

37. As the Debtor intended, numerous individuals, including some of the plaintiffs in the RICO Case, justifiably relied on these false representations, and were damaged by this reliance.

38. Many courts have found that a § 523(a)(2)(A) plaintiff can prevail when the fraudulent statement was directed to a third party. "Nondischargeabililty does not depend on the identity of the claim holder." *Bertuca v. Guillermo Flores (In re Flores, Jr.)*, 2010 Bankr. LEXIS 3328, *8 (D. N.M. 09-01009) (discussing assignment, but the same logic applies here).

WHEREFORE, Grand Estates requests that the Court find that the debt to Grand Estates is not subject to discharge.

                                                Respectfully submitted,
                                                Grand Estates Auction

                                                /s/  Jessica Tovrov
                                                One of its Attorneys

Goodman Tovrov Hardy & Johnson LLC
105 West Madison St.
Suite 1500
Chicago IL 60602
312.252.7362